UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VICKIE M.,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | CASE NO. 2:21-cv-00540-BAT<br><br>**ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE** |

Plaintiff Vickie M. seeks review of the denial of her application for Disability Insurance Benefits. She contends the ALJ erred in evaluating plaintiff's testimony and the medical opinions. Dkt. 11. She also contends that the unconstitutional appointment of the Commissioner of Social Security meant that neither the ALJ nor the Appeals Council had authority to render decisions on her claim. *Id.* The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff applied for benefits on May 4, 2010, alleging disability as of April 30, 2008. Tr. 189-90. She later amended her alleged onset date to the date she filed her application. Tr. 1572. She was 54 years old as of December 31, 2013, her date last insured. Tr. 189.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 1

Two prior ALJ decisions on her claim were remanded from this Court by stipulation of the parties; a third was later remanded by the Appeals Council. Tr. 1213, 1547, 1593. The ALJ issued the decision now under review on June 17, 2020. Tr. 1434-49.

## DISCUSSION

### A. Plaintiff's testimony

Plaintiff argues that the ALJ failed to give valid reasons to discount her testimony. Dkt. 11 at 2. Where, as here, the ALJ did not find that the claimant was malingering, the ALJ must provide clear and convincing reasons to reject her testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).

The ALJ found that the longitudinal medical evidence did not corroborate plaintiff's allegations, that plaintiff's activities were inconsistent with her allegations, and that plaintiff's employment search and receipt of unemployment benefits, along with her conflicting reports of whether she could work, put into question whether her continued unemployment was actually secondary to her medical condition. Tr. 1441-44.

Plaintiff argues that the ALJ placed undue significant on her receipt of unemployment benefits as a basis for rejecting her allegations. Dkt. 11 at 3. She asserts that while receipt of unemployment benefits can undermine a claimant's alleged inability to work full-time, the ALJ must consider whether the claimant held herself out as available for full-time or part-time work. *Id.* She contends that she did not allege total disability during the time she received unemployment benefits, but instead contended that she was unable to perform the exertional

demands of light work and was looking for work that would accommodate her limitations, including limitations on lifting, reaching, and prolonged standing. *Id.* at 3-4. She asserts that the need for accommodations is not inconsistent with allegations of disability. *Id.* at 4.

The ALJ discussed the following evidence with respect to plaintiff's receipt of unemployment benefits and her employment search: Plaintiff applied for and received unemployment benefits as of the date she stopped working, April 30, 2008; she contended that she stopped work due to a back injury. Tr. 1973, 1987, 1991. Throughout the period she received unemployment benefits, plaintiff affirmed that there was not any reason she could not seek or accept full-time work. Tr. 1991, 2007, 2017. Plaintiff stated in July 2008 that she had been diagnosed as "permanently partially disabled" because of her injuries and that "This does not hold me back in finding work or working, I just need to find something that isn't as physically demanding." Tr. 1990. She stated at that time that she was looking for work in retail and that she could not stand or sit for long periods of time and could not do heavy lifting. *Id.* Plaintiff stated in November 2008 that she was able to work even with her back issues, that she would have applied for a job if she had found one that worked with her limitations due to her back injury, and that she had been actively seeking a job by looking online and in the newspaper. Tr. 2046. Plaintiff reported in an August 2010 psychological evaluation that she had tried to get work, but employers would not hire her because of her lifting restrictions. Tr. 495. At the 2017 ALJ hearing, plaintiff testified that she only looked for and was capable of part-time work. Tr. 1503-07. Plaintiff's unemployment benefits expired on April 30, 2010, shortly before she applied for disability benefits on May 4, 2010. Tr. 1976.

The ALJ found that the medical evidence did not establish a substantial change in plaintiff's symptoms and functional limitations between the time when she was looking for work

and holding herself out as capable of full-time work, and the time after the filing of her May 2010 disability application. Tr. 1443. The ALJ noted that before she amended her alleged onset date to the date she filed her disability application, plaintiff alleged an onset date of April 30, 2008, the date she stopped working, but she presented herself as ready and able to work throughout the time she received unemployment compensation. Tr. 1443-44. The ALJ also found that plaintiff's statements about looking for work that wasn't physically demanding implied that she considered herself able to do work with less lifting. Tr. 1444. The ALJ noted that contrary to her hearing testimony that she only looked for and was capable of part-time work, she completed unemployment compensation paperwork indicating there was no reason she could not seek or accept full-time work. *Id.* The ALJ also found it notable that she applied for disability benefits after she had exhausted her unemployment benefits. *Id.*

The ALJ concluded that for a considerable time, plaintiff presented herself as ready and able to work, including affirmatively stating that there was nothing preventing her from working full-time, and that this was her account until her unemployment benefits ran out. *Id.* The ALJ found that her current claim that she was disabled is at odds with her representations that she could perform suitable work until her unemployment benefits were exhausted. *Id.* The ALJ found that these inconsistencies suggested that plaintiff experienced little actual change in symptoms and eroded the reliability of plaintiff's reports of symptoms and their limiting effects. *Id.*

As plaintiff acknowledges, receipt of unemployment benefits can undermine a claimant's alleged inability to work full-time. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62. A claimant holding herself out as available for full-time work is inconsistent with allegations of disability, whereas a claimant holding herself out as available for only part-time

1  work is not. *Id.* In *Carmickle*, the record did not establish whether the claimant held himself out
2  as available for full- or part-time work; the ALJ's reliance on the claimant's receipt of
3  unemployment benefits during the alleged disability period was therefore not supported by
4  substantial evidence. *Id.*

5        Here, unlike in *Carmickle*, the record establishes that plaintiff held herself out as
6  available for full-time work. Tr. 1991, 2007, 2017. Although plaintiff later testified that she only
7  looked for and was capable of part-time work, this testimony directly contradicts the
8  representations she made in conjunction with her receipt of unemployment benefits. These
9  representations provide substantial evidence to support the ALJ's finding that plaintiff's receipt
10 of unemployment benefits undermines her allegations of disability.

11       Plaintiff stated at various times that during the period she received unemployment
12 benefits: (1) there was nothing preventing her from working full time, (2) she was seeking work
13 that would accommodate restrictions on lifting, reaching, and standing, (3) she was seeking only
14 part-time work, and (4) she was disabled. Plaintiff believes the ALJ should have accepted her
15 later testimony that she was seeking only part-time work and/or work that would accommodate
16 her limitations, which she insists was not inconsistent with her allegations of disability. But the
17 ALJ was not required to accept this testimony over her other representations. Although plaintiff
18 has proposed alternative interpretations of her statements, the Court cannot reweigh the evidence
19 nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954
20 (9th Cir. 2002). The ALJ rationally concluded that plaintiff's inconsistent statements about her
21 ability to work during the time she received unemployment benefits undermined the reliability of
22 plaintiff's testimony. This was a valid reason to discount plaintiff's allegations.
23

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 5

1    Because the ALJ gave at least one valid reason to discount plaintiff's testimony, any error
2    in the ALJ's other reasons for discounting that testimony would be harmless. *See Carmickle v.*
3    *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Accordingly, the Court need not
4    address plaintiff's arguments as to the ALJ's other reasons for discounting her testimony. The
5    Court affirms the ALJ's assessment of plaintiff's testimony.

6    **B.    Medical opinions**

7    Plaintiff argues that the ALJ erred in rejecting the opinions of treating doctor Roland
8    Feltner, M.D., and in giving substantial weight to the opinion of consulting doctor Robert
9    Hoskins, M.D. Dkt. 11 at 9. In general, the ALJ should give more weight to the opinion of a
10   treating doctor than to that of a non-treating doctor, and more weight to the opinion of an
11   examining doctor than to that of a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th
12   Cir. 1996). Where it is not contradicted by another doctor, the ALJ may reject a treating or
13   examining doctor's opinion only for "clear and convincing reasons." *Id.* at 830-31. Where
14   contradicted, the ALJ may not reject a treating or examining doctor's opinion without "specific
15   and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31
16   (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

17   *1.    Dr. Feltner*

18   In August 2010, Dr. Feltner completed a disability questionnaire in support of plaintiff's
19   application for disability benefits from a retirement fund. Tr. 411-12. He checked boxes
20   indicating that he advised plaintiff to refrain from working, that plaintiff's condition was
21   "retrogressing," and that she could not perform any employment. *Id.* He wrote that plaintiff was
22   limited by lumbar spine disease and bilateral knee osteoarthritis, was unable to bend, stand, or
23   walk for prolonged periods of time, and improvement was not likely. *Id.*

Plaintiff stopped seeing Dr. Feltner in 2010 and reestablished care with him December 2014. Tr 1401. In December 2014, Dr. Feltner completed a questionnaire in which he opined that plaintiff's standing/walking and sitting were limited to less than 2 hours each in a workday; she would miss more than 4 days of work per month; she could sit for 10 minutes at a time and stand for 20 minutes at a time; she could occasionally lift up to 10 pounds and rarely lift up to 20 pounds; her symptoms would constantly interfere with her attention and concentration even for simple tasks; she would need to get up and walk for 10 minutes every 60 to 90 minutes; would need the opportunity to shift position at will; and would require unscheduled breaks. Tr. 1379-82. He opined that these limitations existed before December 31, 2013. Tr. 1383.

In November 2017, Dr. Feltner completed another questionnaire opining limitations similar to those in his December 2014 opinion, including that the limitations existed before December 31, 2013. Tr. 2398-2402.

The ALJ gave little weight to Dr. Feltner's opinions, finding that they were out of proportion to his treatment notes and the medical evidence in general. Tr. 1445. The ALJ found that Dr. Feltner provided limited treatment during the relevant period, noting that plaintiff saw Dr. Feltner only two times between the amended alleged onset date of May 4, 2010, and the date last insured. *Id.* The ALJ also found that the only opinion from Dr. Felton during the relevant period, his August 2010 opinion, did not specify plaintiff's functional limitations and instead focused on opinions that plaintiff was "disabled" and could not perform her former work or any other work, which the ALJ gave no weight as these are determinations reserved to the Commissioner. Tr. 1446.

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE - 7

1        Plaintiff argues that the ALJ erred in relying on the objective evidence to discount Dr.

2 Feltner's opinions, as the findings the ALJ cited have little relevance in measuring the impact of

3 fibromyalgia. Dkt. 11 at 11.

4        The Ninth Circuit has recognized the unique nature of fibromyalgia. *Revels v. Berryhill*,

5 874 F.3d 648, 656 (9th Cir. 2017). Symptoms of fibromyalgia typically include chronic pain,

6 tender points throughout the body, fatigue, stiffness, and sleep disruption, but individuals with

7 fibromyalgia typically have normal muscle strength, sensory functions, and reflexes. *Id.* There

8 are no laboratory tests or imaging to confirm the diagnosis; rather, it is diagnosed based entirely

9 on the patient's reports of pain and other symptoms. *Id.* at 656-57. In addition, the symptoms of

10 fibromyalgia can wax and wane, and a person with fibromyalgia can have good days and bad

11 days. *Id.* at 657. For this reason, where a claimant has fibromyalgia, the ALJ should consider the

12 longitudinal record when evaluating her RFC. *Id.* (citing Social Security Ruling 12-2p).

13        The ALJ found that the treatment notes from 2008 and 2009 contained generally

14 unremarkable findings and that the notes from August and September 2010 provided support for

15 some limitations, as Dr. Felton noted lumbar tenderness and range of motion limitations and

16 signs of osteoarthritis in plaintiff's knees, but Dr. Felton did not have any further follow-up with

17 plaintiff for these issues before December 2013. Tr. 1445. The ALJ found that Dr. Felton's

18 treatment notes from 2014 contain generally mild or unremarkable physical and mental findings

19 that provided little support for the extreme limitations in his opinion and that suggested

20 improvement in plaintiff's symptoms. Tr. 1445. And the ALJ found that Dr. Felton's 2017

21 opinion is similarly unsupported by his unremarkable findings from the period from 2015 to

22 2017. Tr. 1446. The ALJ thus considered the longitudinal evidence, spanning the course of nine

23

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 8

years, rather than singling out any individual periods of waning symptoms. This consideration of the longitudinal objective evidence does not run afoul of *Revels*.

The ALJ also found that Dr. Felton's opinions were inconsistent with the physical exams and other evidence of record through the date last insured, including 2012 lumbar spine imaging that did not show significant worsening from 2007. Tr. 1446. The ALJ was entitled to consider whether the objective evidence supported Dr. Felton's opinions as to the impact of plaintiff's back impairment. *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999) (ALJ may properly reject a treating physician's opinion that is inconsistent with the record and not supported by objective evidence).

Plaintiff argues that Dr. Felton's long treating relationship with plaintiff, which included treating her after her initial injury and at the onset of her fibromyalgia, should have resulted in his opinions being given more weight. Dkt. 11 at 11. Generally, the ALJ should give more weight to a treating doctor who has had a longer treating relationship with the claimant and who has had more visits with the claimant. 20 C.F.R. § 404.1527(c)(2)(i). The ALJ noted the length of Dr. Felton's treating relationship with plaintiff, discussing treatment notes from 2008 through 2017, but also noted that Dr. Felton saw plaintiff only two times between the amended alleged onset date and the date last insured and thus provided minimal treatment during the relevant period. Tr. 1445. The ALJ was entitled to find that the minimal treatment during the relevant period outweighed the length of the treatment relationship. The Court cannot reweigh these factors. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner).

Plaintiff does not specifically challenge the ALJ's reasons for discounting Dr. Feltner's 2010 opinion. Opinions that fail to specify functional limitations are not useful determining a

claimant's residual functional capacity. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). And an opinion on an issue reserved to the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," is not a medical opinion and is not entitled to any special significance. 20 C.F.R. § 404.1527(d). The ALJ validly discounted Dr. Feltner's 2010 opinion.

The ALJ gave specific and legitimate reasons, supported by substantial evidence, to discount Dr. Feltner's opinions. The Court affirms that assessment.

   *2.   Dr. Hoskins*

In December 2010, Dr. Hoskins reviewed the record and affirmed the initial-level determination from July 2010 that plaintiff could perform light work with postural and environmental limitations. Tr. 769-76, 812. The ALJ gave Dr. Hoskins' opinion substantial weight, finding that the limitations were supported by a summary of the evidence and were largely consistent with the evidence of record, including degenerative changes of the lumbar spine with no diminished motor strength or sensation upon examinations. Tr. 1444. The ALJ nevertheless accounted for the evidence of knee osteoarthritis and "bad" days with body-wide pain and included additional postural and environmental limitations. *Id.*

Plaintiff argues that the ALJ erred in giving weight to this opinion because Dr. Hoskins did not provide any explanation in support of his opinion and did not attest that he had reviewed plaintiff's file or the summary of the evidence but merely noted the data in the file. Dkt. 11 at 11-12.

Dr. Hoskins stated as follows: "This is to affirm that I have noted the data in the file and find the evaluation of 7/3/10 is affirmed." Tr. 812. Plaintiff does not explain how an affirmation that he noted the data is insufficient and an attestation that he reviewed the record is required. The ALJ is entitled to draw reasonable inferences logically flowing from the record. *Tommasetti*

ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE
CASE - 10

*v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982)). The ALJ could reasonably infer Dr. Hoskins' statement to mean that he had had reviewed the record and the summary of the evidence in affirming it.

Moreover, the ALJ found that the underlying July 2010 assessment that Dr. Hoskins affirmed was consistent with the evidence in the record and supported by a summary of that evidence. Tr. 1444. These were valid reasons to give weight to that assessment and Dr. Hoskins' affirmation of it. The ALJ did not err in assessing Dr. Hoskins' opinion.

### C.   Separation of powers

Plaintiff argues that the administrative proceedings were tainted by the unconstitutional appointment of the Commissioner of Social Security in violation of the separation of powers doctrine. Dkt. 11 at 12-18. This Court recently addressed the separation of powers issue in *Lisa Y. v. Commissioner of Social Security*, -- F.Supp 3d--, No. 21-5207-BAT, 2021 WL 5177363 at *5-8 (W.D.Wash. Nov. 8, 2021). In that case, this Court concluded that while 42 U.S.C. § 902(a)(3) violates separation of powers, the violation was not grounds to reverse the Commissioner's final decision and remand the case to the agency. *Id.* For these same reasons, the Court finds that the separation of powers violation is not grounds to reverse and remand this case.

### CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 10th day of December, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge